IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| NORTHERN REGAL HOMES, INC., and RICK WILLIAMS, <br><br>                Plaintiffs, <br><br> v. <br><br> ROUNDPOINT MORTGAGE SERVICING CORP., and NATIONSTAR, INC., <br><br>                Defendants. | **REPORT AND RECOMMENDATION GRANTING PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES and FINDING DEFENDANT'S MOTION FOR ISSUANCE OF DEED AND TO ALLOW DEPOSIT OF JUDGMENT FUNDS MOOT** <br><br> Case No. 1:15-cv-00035-JNP-BCW <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Brooke Wells |

This matter is before the Court on Plaintiffs Northern Regal Homes, Inc.'s and Rick Williams' (collectively "Plaintiffs") Motion for an Award of Attorney's Fees Against RoundPoint Mortgage Servicing Corp. ("Attorney's Fees Motion"),[1] and Defendant RoundPoint Mortgage Servicing Corp.'s ("RoundPoint") Motion for Issuance of Deed and to Allow Deposit of Judgment Funds into Court Registry ("Issuance Motion").[2]  Both motions have been fully briefed by the parties.[3] This matter was referred to Magistrate Judge Brooke Wells by District Judge Jill Parrish pursuant to 28 U.S.C. § 636(b)(1)(A).[4]  The Court has carefully reviewed the memoranda submitted by the parties.  Pursuant to DUCivR 7-1(f), this Court has determined that

---

[1] Docket no. 118.

[2] Docket no. 125.

[3] Docket no. 119 (Response to Attorney's Fees Motion), Docket no. 123 (Reply to Attorney's Fees Motion), Docket no. 126 (Opposition to Issuance Motion), and Docket no. 127 (Reply to Issuance Motion).

[4] Docket no. 4.

oral argument on the motions is unnecessary and will determine the motions on the basis of the written memoranda.

## BACKGROUND[5]

In November 2006, Plaintiffs entered into a construction loan agreement ("Loan Agreement") with Barnes Banking Company ("Barnes") for constructing a single-family residence in Hooper, Utah.  Plaintiffs intended to use the property as a rental investment.  In connection with the Loan Agreement, Plaintiffs executed a promissory note ("Note"), and a construction deed of trust ("DOT"). Later, in May 2007, Plaintiffs and Barnes entered into a change in terms agreement ("CIT Agreement") that converted the construction loan into a five year mortgage.  After construction was complete, Plaintiffs rented the house to a tenant and his family.

Sometime in early 2011 the servicing of the loan was transferred to RoundPoint, and then the loan was sold to RoundPoint.  When RoundPoint took over the servicing of the loan, RoundPoint's records erroneously indicated that Plaintiffs were late on payments.  In October 2011, RoundPoint sent a letter notifying Plaintiffs they were in default.  Plaintiffs disputed the alleged default and explained that they had made every payment. Plaintiffs sent their November 2011 payment by check, and RoundPoint rejected it and returned the check.  Plaintiffs made continued attempts to make payments for the next six months, every payment was rejected and sent back by RoundPoint.

Although no default had occurred, and despite Plaintiffs efforts to inform RoundPoint of its error, RoundPoint recorded a notice of default with Weber County (which was later

---

[5] The background facts in this section are summarized from the District Judge's opinion at Docket no. 115, unless another source is cited.

cancelled).  In June 2012, RoundPoint reaffirmed its position that the loan was in default via

letter to Plaintiffs, and stated that if the default was not cured it would foreclose.  A few days

later, after Plaintiffs' tenants had moved out, RoundPoint's agents changed the locks on the

doors to the property and disabled the garage door opener.  RoundPoint also cut the grass,

winterized the property, and posted a sign in the front window stating the home was managed by

RoundPoint's agent.  Plaintiffs sent RoundPoint a letter in August 2012, informing RoundPoint

that they continued to dispute the existence of a default and that they had been locked out of the

property.

      Between August 2012 and January 2014, there were a number of communications

between the parties, and at one point RoundPoint moved forward with foreclosure proceedings,

but did not go through with the trustee's sale due to the dispute.  Ultimately, in September 2013,

RoundPoint acknowledged that there were errors in the loan file with regard to payments,

maturity date, and payment due dates when it received the loan.  RoundPoint offered to reconcile

the account and work with Plaintiffs to reinstate the loan.  Plaintiffs rejected RoundPoint's offer.

      On or about September 25, 2014, Plaintiffs filed their original complaint in the Second

Judicial District Court, Weber County, Ogden Department, Utah.[6]  On or about January 22,

2015, Plaintiffs filed an amended complaint and served it on RoundPoint.[7]  On February 20,

2015, RoundPoint removed the action to this Court.[8]

---

[6] Docket no. 2, p. 1.

[7] *Id.* at p. 2.

[8] Docket no. 2.

In Plaintiffs' amended complaint they assert three causes of action against RoundPoint—breach of contract, unjust enrichment, and lender liability.[9]  With respect to the breach of contract claim, Plaintiffs alleged "that RoundPoint breached the parties' agreement when it failed to accept loan payments and returned them to [Plaintiffs], erroneously declared a default and wrongfully pursued the non-existent default, and twice initiated foreclosure proceedings when there was no delinquency or other default."[10]  The Court found that RoundPoint had breached the express terms of the Note by failing to accept Plaintiffs' payments and returning them, instead of applying the payments as directed under the terms of the Note.[11]  The Court also found that RoundPoint had breached the terms of the Note, DOT, and Loan Agreement "by exercising rights related to an event of default when no such event had taken place."[12]

Additionally, in their breach of contract claim, Plaintiffs argued "that RoundPoint breached the Loan agreements when it took control, use, possession, and management of the Property without a right to do so by changing the locks and disabling the garage door openers, thereby depriving [Plaintiffs] of any access to the Property."[13]  The Court concluded that "RoundPoint did take possession and control of the Property and did so without a contractual right. Therefore, RoundPoint breached its obligations under the Loan as a matter of law when it changed the locks and disabled the garage door openers, thereby depriving [Plaintiffs] of their right to the Property."[14]

---

[9] Docket no. 8-1.

[10] Docket no. 78, p. 10.

[11] *Id.* at p. 11.

[12] *Id.* at p. 12.

[13] *Id.* at p. 10.

[14] *Id.* at p. 14.

With regard to the unjust enrichment claim, the Plaintiffs conceded to the dismissal of this claim because "[t]he parties do not dispute that there is an express contract that governs their relationship and that the unjust enrichment claim *arises out of the same facts* as the breach of contract claim."[15]

Finally, Plaintiffs' lender liability claim relied on the argument that RoundPoint breached common law duties when it took possession of the property and blocked Plaintiffs from accessing it.[16]   RoundPoint argued that lender liability is only available to third parties.[17]   Finding no Utah law that would support a claim for a lender's conduct toward its borrower, the Court did not allow this claim to go forward and granted RoundPoint's motion for summary judgment on the lender liability claim.[18]

In April 2017, the Court held a bench trial to determine the appropriate measure of damages stemming from RoundPoint's breach of contract.   The Court ordered that the title to the property be transferred to RoundPoint in satisfaction of the Note, that judgment be entered against RoundPoint in the amount of $138,668.00, plus postjudgment interest, and that the Plaintiffs file any motion for attorney's fees within ten days of the Court's order.[19]

---

[15] *Id*. at p. 17 (emphasis added).

[16] *Id.* at p. 18.

[17] *Id*.

[18] *Id.* at p. 19.

[19] Docket no. 115.

## ANALYSIS

### I.  Motion for an Award of Attorney's Fees Against RoundPoint

Plaintiffs seek an award of their attorney's fees against RoundPoint pursuant to Utah Code Ann. §78B-5-826 (2008) (the "Reciprocal Fee Statute").  RoundPoint opposes such award by arguing that Plaintiffs were not the prevailing party in this action, and that even if the Court finds Plaintiffs prevailed they are not entitled to attorney's fees under the Reciprocal Fee Statute. Finally, RoundPoint argues that even if Plaintiffs are entitled to attorney's fees, the fees requested are not reasonable.  The Court addresses these arguments below.

#### a.  Reciprocal Fee Statute

"Attorney fees are generally recoverable in Utah only when authorized by statute or contract."[20]  Here, Plaintiffs seek an award of their attorney's fees incurred in this action under the Reciprocal Fee Statute. The Reciprocal Fee Statute states:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.[21]

"The statue 'is triggered only when the provisions of the contract would allow at least one party to recover fees if that party had prevailed under its theory of the case.'"[22]  The Reciprocal Fee Statute "'was designed to create a level playing field for parties to a contractual dispute . . . by allowing both parties to recover fees where only one party may assert such a right

---

[20] *Velocity Press v. Key Bank, NA,* 570 F. App'x 783, 793 (10th Cir. 2014) (citation omitted).

[21] Utah Code Ann. § 78B-5-826.

[22] *Velocity Press*, 570 F. App'x at 793 (citation omitted).

under contract, remedying the unequal allocation of litigation risks built into many contracts of adhesion.'"[23]

The Reciprocal Fee Statute "does not create an independent right to a fee award that the contract's attorney fee provision would not allow to either party simply because the fee provision is one-sided."[24]  Accordingly, this Court "must look to whether fees would have been available to the other party had it prevailed on the claims asserted rather than considering hypothetical claims that might have been asserted by the losing party."[25]

In order to apply the Reciprocal Fee Statute to this matter, this Court must determine "(a) [i]f the provisions of a written contract allow [Plaintiffs] to recover[] attorney fees in [this] action based upon the contract,"[26] and (b) if Plaintiffs are the prevailing party.

### i. Attorney's Fees Provision

In looking at the contracts in this matter there are several attorney's fees provisions to consider.  The Court in its decision on the merits in favor of Plaintiffs on their breach of contract claim collectively referred to the Note, Loan Agreement, and DOT as the "Loan", and found that RoundPoint had "breach its obligations under the Loan."[27]  Based on this finding, this Court will consider the attorney's fees provisions in each of those contracts.

The attorney's fees provision in the Note states:

> *Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.*  This includes, subject to any limits under applicable law, Lender's reasonable attorneys'

---

[23] *Id.* (*citing Bilanzich v. Lonetti*, 160 P.3d 1041, 1046 (Utah 2007)).

[24] *Id*. (*citing PC Crane Servs., LLC v. McQueen Masonry, Inc.*, 273 P.3d 396, 408 (Utah Ct. App. 2012)).

[25] *Id.* at 794.

[26] *Id.* at 793.

[27] Docket no. 78, p. 14.

fees and Lender's legal expenses, whether or not there is a lawsuit, including without limitation all attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.[28]

This provision is similar to the provision at issue in *Velocity Press.*[29]  In *Velocity Press*

"[t]he attorneys' fee provision allowed Key to recover only if it 'hire[d] or pa[id] someone else

to help collect this Note if [Velocity] does not pay.'"[30]  The Tenth Circuit found that "[b]ecause

Key did not incur expenses to collect on the note, the fee provision in this case would not have

allowed for recovery if Key had successfully defended against Velocity's claims."[31]  Similar to

*Velocity Press*, this Court cannot find that Plaintiffs may recover under this provision given the

same limited circumstances.  Here RoundPoint did not incur expenses to collect on the note, and

would not be entitled to attorney's fees if they had prevailed on its defense against Plaintiffs

under this provision.

Turning to the DOT, the attorney's fees provision states:

> If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. *Whether or not any court action is involved*, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid.  Expenses covered by this paragraph include, without limitation, however, subject to any limits under applicable law, Lender's reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection

---

[28] Docket no. 118-1 (emphasis added).

[29] *Velocity Press,* 570 F. App'x 783.

[30] *Id*. at 793.

[31] *Id*. at 794 (citation omitted).

> services, the cost of searching records, obtaining title reports (including foreclosure report), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law.  Trustor also will pay any court costs, in addition to all other sums provided by law.[32]

This attorney's fees provision is broader than the scope of the Note provision, but the scope is somewhat narrowed by the introductory phrase "if Lender *institutes* any suit or action." If this Court were to only look at the litigation of this matter and not the pretext leading to the litigation, it would appear that RoundPoint (had it succeeded) would not be entitled to fees under this provision because it did not institute the litigation.  However, this provision clearly contemplates an action "whether or not any court action is involved."  Here, it was RoundPoint who took a number of "actions" to enforce the agreements in this matter prior to any litigation. RoundPoint initiated action to enforce the agreements when it rejected Plaintiffs' loan payments and returned them, "erroneously declared a default and wrongfully pursued the non-existent default, and twice initiated foreclosure proceedings when there was no delinquency or other default."[33]  Further, RoundPoint "took control, use, possession, and management of the Property without a right to do so by changing the locks and disabling the garage door openers, thereby depriving [Plaintiffs] of any access to the Property."[34]  It was these actions, initiated by RoundPoint, which forced Plaintiffs to file suit.  Plaintiffs would not have filed this action but for the actions RoundPoint initiated to enforce the agreements.  There is no doubt that had RoundPoint succeeded in its defense of this action, that it would argue that it is entitled to fees based on the actions they initiated prior to the litigation.  Thus, should this Court determine that

---

[32] Docket no. 118-1 (emphasis added).

[33] Docket no. 78, p. 10.

[34] *Id*.

Plaintiffs are the prevailing party in this litigation, Plaintiffs may be awarded attorney's fees under the Reciprocal Fee Statute under the DOT attorney's fees provision.

Assuming, arguendo, that Plaintiffs were not entitled to attorney's fees under the DOT provision, the Court will consider the Loan Agreement attorney's fees provision which is even broader.  The Loan Agreement states:

> Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, *incurred in connection with the enforcement of this Agreement*. Lender may hire or pay someone to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. . . .[35]

This provision does not require that Lender institute the suit or action for enforcement, and merely requires payment of reasonable attorney's fees "incurred in connection with the enforcement of this Agreement."  This provision is clearly broad enough to encompass RoundPoint's attorney's fees if it would have prevailed on its defense to Plaintiffs' breach of contract claim, and therefore the Reciprocal Fee Statute would apply to this provision as well.

ii.  <u>Prevailing Party</u>

Now, this Court must determine if Plaintiffs were the prevailing party in this litigation. The determination of which party is the prevailing party is left to the sound discretion of the trial court, and depends in large part on the context of each case.[36]  In determining which party is the prevailing party, Utah courts consider the following factors:

> (1) [the] contractual language, (2) the number of claims, counterclaims, etc., brought by the parties, (3) the importance of the claims relative to each other and their significance in the context of the lawsuit considered

---

[35] <u>Docket no. 118-1</u>.

[36] *R.T. Nielson Co. v. Cook*, 40 P.3d 1119, 1126-27 (Utah 2002)).

as a whole, and (4) the dollar amounts attached to and awarded in connection with the various claims.[37]

As discussed above, this Court determined that the contractual language of the DOT and Loan Agreement support an award of attorney's fees to Plaintiff if they are determined to be the prevailing party. Plaintiffs brought three claims against RoundPoint—breach of contract, unjust enrichment, and lender liability. As summarized in the background section above, Plaintiffs prevailed on their breach of contract claim, stipulated to the dismissal of their unjust enrichment claim, and summary judgment disposed of their lender liability claim.

The breach of contract claim, on which Plaintiffs' succeeded, was the most significant claim raised in Plaintiffs' case. Plaintiffs stipulated to the dismissal of the unjust enrichment claim because it was essentially plead as an alternative to the breach of contract claim and arose out to the same facts. Plaintiffs' lender liability claim was largely dependent on RoundPoint wrongfully taking possession of Plaintiffs' property in violation of Plaintiffs' rights and in breach of RoundPoint's common law duties to Plaintiffs. The Court found that there was no precedent under Utah law allowing Plaintiffs' lender liability claim to survive. The Court also noted that even if the claim would have survived, it would not be available in this case because of the lender's obligations were covered by the contract. Thus, similar to the unjust enrichment claim, the basis for the lender liability claim was subsumed in the breach of contract claim.

With respect to the damages awarded, RoundPoint claims that Plaintiffs did not prevail because they were only awarded a fraction of the amount of damages they sought. The Court is not persuaded by this argument. After trial on damages, the Court found "[t]he Borrowers have

---

[37] *Anderson & Karrenberg v. Warnick*, 289 P.3d 600, 604 (Utah Ct. App. 2012) (*citing R.T. Nielson Co.* 40 P.3d at 1127).

been damaged—and continue to be damaged—by no fault of their own and they did not fail to mitigate their damages."[38]  Although the Court did not agree with the Plaintiffs' calculation of damages (the Court found it would have resulted in a double recovery), it determined that proper compensation to Plaintiffs would be the equity in the home less the balance on the loan had RoundPoint not breached.[39]  In making this calculation the Court considered the amount of cash flow Plaintiffs would have received from renters had RoundPoint not wrongfully taken possession.  Just because the Court disagreed with Plaintiffs calculation of damages, does not mean that they did not prevail, the Court clearly found that Plaintiffs had been damaged by RoundPoint.

Considering the foregoing, this Court finds that Plaintiffs are the prevailing party in this matter and are entitled to their attorney's fees under Utah's Reciprocal Fee Statute.

### b.  Reasonable Fee

"[T]he trial court has broad discretion in determining what constitutes a reasonable fee."[40]  "Plaintiff has the burden of proving in the first instance the extent and reasonableness of requested attorney's fees with meticulous and contemporaneous time records."[41]

In determining a reasonable fee, Utah Courts have looked at the following factors: "the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result achieved and the necessity of initiating a lawsuit to vindicate the rights under

---

[38] Docket no. 115, p. 9.

[39] *Id.*

[40] *R.T. Nielson Co.*, 40 P.3d at 1126.

[41] *Sheets v. Salt Lake County*, 45 F.3d 1383, 1391 (10th Cir. 1995) (citation omitted).

the contract."[42]  Other factors considered include "the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services[.]"[43]  In *Dixie*, the Utah court provided the trial court with four questions to be considered when determining a reasonable fee:

> 1. What legal work was actually performed? 2. How much of the work performed was reasonably necessary to adequately prosecute the matter? 3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?  4. Are there any circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?[44]

In considering the first *Dixie* factor, Plaintiffs' counsel has submitted three affidavits that provide sufficient detail about the date work was preformed, what work was performed, how many hours were worked, the billing rate, and total billed.

In looking at the second *Dixie* factor, the Court considers how much of the work was necessary to reasonably prosecute the matter. With respect to this factor, RoundPoint argues that the requested fees are not reasonable because (a) Plaintiffs have not demonstrated that all of the work was reasonably necessary to prosecute the matter, (b) two of Plaintiffs' three causes of action were dismissed, (c) Plaintiffs brought and pursued claims for reputation and punitive damages even though they could not be supported, (d) the affidavits include time for preparation and filing of unnecessary papers, (e) time for consultations with their expert who's theory was rejected by the Court, and (f) there was excessive time billed for research.

---

[42] *Dixie State Bank v. Bracken*, 764 P.2d 985, 989 (Utah 1988) (*quoting Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984)).

[43] *Id*. (*quoting Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1983)).

[44] *Id*. at 990.

In response to RoundPoint's arguments, Plaintiffs' counsel voluntarily subtracted time related to the following items: the second amended complaint, lender liability claim, reputation damages claim, punitive damages claim, and post-trial brief.  Reducing the fees by $11,115.00. Further, Plaintiff agreed to an additional ten-percent (10%) reduction to account for any overlap, thus another $12,367.60 reduction.  The Court finds that Plaintiff's counsel's voluntary reduction of time adequately addresses a number of concerns raised by RoundPoint.

The Court finds that the time Plaintiffs spent working with their expert in preparation for trial was a reasonable and necessary expense.  The fact that the Court did not agree with Plaintiffs' expert's opinion does not invalidate the necessity of the expert or the time spent with that expert preparing for trial.  Further, in response to RoundPoint's claim that 77.8 hours of research plus other research in block billing entries was excessive, the Court finds that the hours of research only attributed to 14-23% of counsel's billed time.[45]  Considering that the merits of this case were determined via summary judgment motions and the damages were determined by trial, this Court does not find that spending 14-23% of the billed time in this case on research is unreasonable—especially given the unique fact scenario that this case presented.

The third *Dixie* factor asks the Court to consider whether the attorney's billing rate is consistent with the rates customarily charged in the locality for similar services.  Plaintiffs' counsel's affidavit states the following "I charged Plaintiffs $250.00 per hour (before January 1, 2017) and $275 per hour (after January 1, 2017), which is reasonable in Ogden, Utah area."[46] Plaintiffs' counsel also represents in the affidavit that his associate Blake Johnson bills at $215

---

[45] Twenty-three percent is a high outside number based on 77.8 hours plus 48.6 hours of bulk billed items.  The Court acknowledges that the bulk billed entries do not completely consist of research, and the total hours are just used to illustrate the general percentage of time spent on research in this case.

[46] Docket no. 118-4, ¶4.

per hour, and associate Ken Brown bills at $185 per hour.[47] RoundPoint does not raise any issue with the billing rates presented by Plaintiffs' counsel, but argues that the requested fees are not reasonable because time should have been billed by an associate rather than a partner. The difference between Mr. Hammond's and his associates billing rates (less than $100) are not as significant as the rates that are charged in other parts of the country[48] where differences between partners and associates can often be $200 or more. The Court will not question Mr. Hammond's delegation of work between himself and the associate attorneys, as it is clear from the billing records that Mr. Hammond was responsible for the client relationship, the motion for summary judgment, witness and expert preparation, and trial. From the record the general scope of work and delegation appears reasonable, and the billing rates are consistent with those rates customarily charged in the area. Any excess, if any, was reasonably taken care of by the additional ten-percent reduction offered by Mr. Hammond and noted above.

Finally, the fourth *Dixie* factor asks the Court to look at any circumstances that require consideration of additional factors, such as those listed in the Code of Professional Responsibility. The Court does not see any issues that would require further consideration in evaluating the reasonableness of Plaintiffs' attorney's fees. The Court finds that the fees with the $23,482.60 reduction proposed by Plaintiffs' counsel are reasonable and sufficiently supported by the affidavits submitted with the Attorney's Fees Motion.

---

[47] *Id*. at ¶¶ 5 and 6.

[48] RoundPoint cites to New York cases where the partner was billing at a rate of $450 an hour and his associates were billing at rates of $250 an hour or less. *See Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015) and *Guo v. Tommy's Sushi, Inc.*, 2016 WL 452319 (S.D.N.Y. Feb. 5, 2016).

Accordingly, the Court recommends that Plaintiffs' Motion for an Award of Attorney's Fees against RoundPoint be GRANTED and that Plaintiffs' be awarded attorney's fees in the amount of $111,308.40.

## II.    Motion for Issuance of Deed and Allow Deposit of Judgment Funds

RoundPoint's Issuance Motion was filed while awaiting a decision on the attorney's fees issue decided above.  In its Issuance Motion, RoundPoint requests an order from this Court ordering the issuance of the deed and allowing RoundPoint to deposit the money judgment into the Court's registry.

As the Court has now ruled on the attorney's fees issue above, the Court finds that the need to deposit judgment funds with the Court is now unnecessary.  Accordingly, the Court finds that the Issuance Motion is now MOOT.

## ORDER

Based on the foregoing, the Court hereby RECOMMENDS that Plaintiffs' Motion for an Award of Attorney's Fees against RoundPoint be GRANTED and that Plaintiffs' be awarded attorney's fees in the amount of $111,308.40.  Further, the Court finds that RoundPoint's Motion for Issuance of Deed and to Allow Deposit of Judgment Funds into Court Registry is MOOT.

DATED this 11 December 2017.

Brooke C. Wells
United States Magistrate Judge

**NOTICE**

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object.[49]  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.[50]  Failure to object may constitute waiver of objections upon subsequent review.

---

[49] *See* 28 U.S.C. § 636(b)(1); FRCP 72(b).

[50] *Id.*