# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NORTHERN REGAL HOMES, INC., and RICK WILLIAMS,<br><br>     *Plaintiffs*,<br>v.<br><br>ROUNDPOINT MORTGAGE SERVICING CORP., and NATIONSTAR, INC.,<br><br>     *Defendants*. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br><br>Case No. 1:15-cv-00035<br><br>District Judge Jill N. Parrish |

  Before the court is Magistrate Judge Wells' Report and Recommendation Granting Plaintiffs' Motion for an Award of Attorney's Fees and Finding Defendant's Motion for Issuance of Deed and to Allow Deposit of Judgment Funds Moot (ECF No. 128). For the reasons set forth below, the court ADOPTS the report and recommendation as it relates to the issue of attorneys' fees. The forthcoming judgment will address the issues raised in in RoundPoint's Motion for Issuance of Deed and to Allow Deposit of Judgment Funds into Court Registry (ECF No. 125).

## I. BACKGROUND

  In November 2006, Plaintiffs Northern Regal Homes and Rick Williams (collectively, "Plaintiffs") entered into a construction loan agreement (the "Loan Agreement") with Barnes Banking Company to construct a single-family home in Hooper, Utah. Plaintiffs intended to use the home as a rental investment. In connection with the Loan Agreement, Plaintiffs executed a promissory note (the "Note") and a construction deed of trust (the "DOT"). In May 2007, Plaintiffs and Barnes entered into a change in terms agreement (the "CIT Agreement") that

converted the construction loan into a five-year mortgage. After construction was complete, Plaintiffs rented the home to a tenant and his family.

Sometime in early 2011, servicing of the mortgage was transferred to Defendant RoundPoint Mortgage Servicing Corporation. RoundPoint's records incorrectly indicated that Plaintiffs were late on payments. In October 2011, RoundPoint sent a letter to Plaintiffs, notifying them that they were in default. Plaintiffs disputed the alleged default and explained that they were up to date on all payments. Plaintiffs sent their November 2011 payment by check. RoundPoint rejected it and returned the check. Plaintiffs sent payments for another six months. But RoundPoint rejected and sent back each payment.

Although no default had occurred, and despite Plaintiffs continued efforts to inform RoundPoint of its error, RoundPoint recorded a notice of default with Weber County. In June 2012, RoundPoint sent a letter to Plaintiff. In the letter, RoundPoint reaffirmed its position that the mortgage was in default and stated that it would foreclose if Plaintiffs did not cure the "default." A few days later, Plaintiffs' tenant moved out and RoundPoint's agent changed the locks for the home and disabled the garage door opener. RoundPoint also cut the grass, winterized the property, and posted a sign in the front window stating that RoundPoint's agent managed the home. Plaintiffs, in a letter, informed RoundPoint that they continued to dispute the alleged default and that they had been locked out of the property.

Between August 2012 and January 2014, there were a number of communications between the parties. At one point, RoundPoint moved forward with foreclosure proceedings, but it did not go forward with the trustee's sale due to the dispute. Ultimately, in September 2013, RoundPoint acknowledged that there were errors in its files. While RoundPoint offered to reconcile the errors and work with Plaintiffs to reinstate the mortgage, its offer was contingent on

Plaintiffs paying $50,000 in fees and expenses *that RoundPoint incurred* in pursuing the non-existent default. Plaintiffs understandably rejected the offer.

On or about September 25, 2014, Plaintiffs filed their original complaint in the Second Judicial District, Weber County, Ogden Department, Utah. On or about January 22, 2015, Plaintiffs filed an amended complaint. On February 20, 2015, RoundPoint removed the case to this court.

Plaintiffs' amended complaint alleged three causes of action against RoundPoint: (1) breach of contract; (2) unjust enrichment, and (3) lender liability. The court dismissed Plaintiffs' claims for unjust enrichment and lender liability. The court dismissed the unjust-enrichment claim because Plaintiffs conceded that an express contract governed the parties' relationship and that the unjust-enrichment claim arose from the same set of facts as the breach-of-contract claim. The court dismissed the lender-liability claim because under Utah law such a claim was available only to third parties, not borrowers.

With respect to the breach-of-contract claim, Plaintiffs alleged that "RoundPoint breached the parties' agreement when it failed to accept loan payments and returned them to [Plaintiffs], erroneously declared a default and wrongfully pursued the non-existent default, and twice initiated foreclosure proceedings when there was no delinquency or default." The court agreed and found that RoundPoint breached the express terms of the Note by refusing to accept Plaintiffs' payments, instead of applying the payments to the mortgage as directed by the terms of the Note. The court also found that RoundPoint breached the terms of the Note, DOT, and Loan Agreement "by exercising rights related to an event of default when no such event had taken place."

Plaintiffs, also in connection with the breach-of-contract claim, alleged that "RoundPoint breached the Loan Agreement when it took control, use, possession, and management of the Property without a right to do so by changing the locks and disabling the garage door openers, thereby depriving [Plaintiffs] of any access to the Property." The court concluded that "RoundPoint did take possession and control of the Property and did so without a contractual right." Consequently, "RoundPoint breached its obligations under the Loan as a matter of law when it changed the locks and disabled the garage door openers, thereby depriving [Plaintiffs] of their right to the Property."

In April 2017, the court held a two-day bench trial to determine the amount of damages associated with the breach-of-contract claim. In June, after the trial, the court ordered: (1) that Plaintiffs transfer title to the property to RoundPoint in satisfaction of the Note; (2) that judgment be entered against RoundPoint in the amount of $138,668.00, plus post-judgment interest; and (3) that Plaintiffs file any motion for attorneys' fees within ten days of the court's order.

On June 19, 2017, Plaintiffs moved for an award of attorneys' fees. Plaintiffs initially sought $134,791.00 in attorneys' fees. RoundPoint opposed Plaintiffs' request on a variety of grounds. RoundPoint argued, among other things, that Plaintiffs failed to apportion their attorneys' fees between compensable and non-compensable claims. Plaintiffs, in reply to RoundPoint's arguments, reduced their fee request to $111,308.40. This matter was referred to Magistrate Judge Wells pursuant to 28 U.S.C. § 636(b)(1)(B).

On December 11, 2017, Judge Wells issued a report and recommendation. She recommended that this court award Plaintiffs $111,308.40 in attorneys' fees, the amount Plaintiffs requested in their reply brief. RoundPoint has objected to the report and

recommendation. It argues, among other things, that the court should exercise its discretion and deny fees altogether on the grounds that Plaintiffs failed to properly apportion their fees.

## II. DISCUSSION

### A. STANDARD OF REVIEW

If a party objects to portions of a magistrate judge's report and recommendation, the district court reviews those portions *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also In re Griego*, 64 F.3d 580, 583-84 (10th Cir. 1995). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). As such, if neither party objects to certain portions of a report and recommendation, the district court need only determine that there is no "clear error" with respect to those portions. *See* Fed. R. Civ. P. 72(b) advisory committee's note (1983) (citing *Campbell v. U.S. Dist. Court for N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974), *cert. denied*, 419 U.S. 879).[1]

### B. ISSUES NOT RAISED IN ROUNDPOINT'S OBJECTION

Judge Wells concluded that Plaintiffs were entitled to attorneys' fees under Utah's reciprocal fee statute, Utah Code Ann. § 78B-5-826. RoundPoint did not object to this conclusion. The court agrees with Judge Wells' reasoning. Moreover, RoundPoint has not objected to this conclusion, so it has waived its right to contest this issue on appeal.

---

[1] The Tenth Circuit has adopted the firm-waiver rule. *One Parcel*, 73 F.3d at 1059. Under this rule, "the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *Id.* (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Precluding appellate review of any issue not raised in an objection "prevents a litigant from 'sandbagging' the district judge by failing to object and then appealing." *Thomas*, 474 U.S. at 147-48.

### C. ISSUES RAISED IN ROUNDPOINT'S OBJECTION

RoundPoint's objection focuses on the timing and adequacy of Plaintiffs' apportionment of fees to compensable and non-compensable claims. This is not the first time that RoundPoint raised the issue of apportionment. In opposition to Plaintiffs' motion for attorneys' fees, RoundPoint argued that Plaintiffs failed to apportion fees between the compensable breach-of-contract claim and non-compensable unjust-enrichment and lender-liability claims.

Plaintiffs, in their reply brief, voluntarily reduced their fee request in an attempt to address RoundPoint's concerns. Plaintiffs first reduced their initial fee request from $134,791.00 to $123,676.00, a reduction of $11,150.00, to account for billing entries that corresponded to non-compensable claims. Plaintiffs then reduced their fee request from $123,676.00 to $113,308.40, a ten percent reduction, to account for any potential overlap between amounts billed for compensable and non-compensable claims. In sum, Plaintiffs reduced their initial fee request of $134,791.00 to $113,308.40, a total reduction of $23,482.60. Judge Wells found that this reduction was "reasonable and sufficiently supported by the affidavits" attached to the motion for attorneys' fees.

Despite this, RoundPoint has objected to the report and recommendation. In essence, RoundPoint argues that the court should disallow attorneys' fees altogether for two reasons. *First*, RoundPoint argues that Plaintiffs, even in their reply brief, failed to adequately apportion fees. *Second*, RoundPoint contends that, even if Plaintiffs sufficiently apportioned their fees in their reply brief, the court should disregard that calculation and disallow fees because RoundPoint was deprived of the opportunity to respond to the reply brief before Judge Wells issued her report and recommendation. The court is not persuaded by either argument.

An award of attorneys' fees must be based on evidence and supported by findings of fact. *Foote v. Clark*, 962 P.2d 52, 55 (Utah 1998). The party seeking attorneys' fees has the burden of

producing evidence to "buttress the requested award." *Id.* The initial burden of producing evidence to support an award of attorneys' fees includes the obligation to apportion a "fee request according to the [moving party's] underlying claims." *Id.* As such, a party must categorize the time and expense expended for "(1) successful claims for which there may be an entitlement to attorney fees, (2) unsuccessful claims for which there would have been an entitlement to attorney fees, and (3) claims for which there is no entitlement to attorney fees." *Id.* (quoting *Cottonwood Mall*, 830 P.2d at 269-70).

A failure to apportion fees "makes it difficult, if not impossible, for the trial court to award the moving party fees because there is insufficient evidence to support the award." *Jensen v. Sawyers*, 130 P.3d 325, 349 (Utah 2005). Consequently, "[a] trial court may, *in its discretion*, deny fees altogether" based on the moving party's failure to allocate. *Foote*, 962 P.2d at 57 (emphasis added) (quoting *Valcarce v. Fitzgerald*, 961 P.2d 305, 318 (Utah 1998)). And a trial court may not "award wholesale" all attorneys' fees requested if the fees have not been allocated to as to separate claims. *Id.*

### 1. Whether Plaintiffs Adequately Apportioned Attorneys' Fees

The court first turns to the issue of whether Plaintiffs adequately apportioned attorneys' fees between compensable and non-compensable claims. RoundPoint contends that Plaintiffs failed to do so in both their motion for attorneys' fees and their reply brief. The court disagrees.

*First*, Plaintiffs adequately apportioned their attorneys' fees in their initial motion for attorneys' fees. Plaintiffs' billing records describe the amount billed for discrete activities. The records also indicate, when feasible, to which cause of action the activities corresponded. For instance, the records include descriptions such as "[r]esearch lender liability" and "research on damages." These descriptions allow this court to separate the recoverable from the

7

nonrecoverable.[2] Some activities, such as "[m]eeting with client" could have corresponded to multiple causes of action. But the court sees no reason to disallow fees associated with these types of entries.

RoundPoint had the opportunity to review the billings records and to challenge those entries that corresponded to non-compensable claims. Instead of doing this, RoundPoint took the position that "Plaintiffs' request for attorney's fees should be denied due to their failure to apportion their recoverable fees." Notably, however, RoundPoint, in the alternative, invited the court to "reduce or apportion any attorney's fees awarded to Plaintiffs to reflect that the fees may not be awarded in connection with Plaintiffs' unsuccessful, non-contract claims." Judge Wells honored that request and reduced Plaintiffs' award to reflect fees that were billed in connection with non-compensable claims. RoundPoints attempt to now object to something *it asked Judge Wells to do*, albeit in the alternative, is disingenuous at best.

*Second*, even assuming that Plaintiffs failed to adequately apportion their fees in their motion for attorneys' fees, they adequately apportioned fees in their reply brief. As discussed above, Plaintiffs apportioned $23,482.60 to non-compensable claims. Instead of identifying remaining entries that corresponded to non-compensable claims, RoundPoint has taken the position that this reduction is unprincipled. Specifically, RoundPoint argues that Plaintiffs are not entitled to 80 percent of their initial fee request because they prevailed on only one of three claims.

But RoundPoint's argument ignores the billing records submitted by Plaintiffs. RoundPoint argues that Plaintiffs have not explained why the ten percent reduction is

---

[2] The court does note, however, that counsel for Plaintiffs could have saved himself, and the court, time and expense by summarizing the amount of compensable fees reflected in the billing record attached to the motion for attorneys' fees.

appropriate. But this ignores the fact that Plaintiffs applied the ten percent reduction only *after* they had eliminated billing entries that corresponded to non-compensable claims. The remaining billings entries, on their face, related to compensable claims. The ten percent reduction was merely an additional concession *to RoundPoint* to account for any incidental overlap in the remaining billing entries. And instead of identifying whether any of the remaining entries corresponded to non-compensable claims (it does not appear that there are any such entries) RoundPoint has simply taken the position that ten percent is not the right amount. This may be the case, but neither RoundPoint nor the billing records give the court any basis for concluding otherwise.

RoundPoint's argument also ignores how this case was actually litigated. In essence, RoundPoint asks the court to determine whether the requested fee is reasonable based solely on the fact that Plaintiffs prevailed on only one of their three claims, as opposed to the facts and circumstances of the case. Although Plaintiffs prevailed on only one of three claims, the claim they prevailed on—breach of contract—was the main claim at issue throughout the course of the litigation. The other claims were alternative theories of recovery that sought the same or similar relief as the breach-of-contract claim. RoundPoint also ignores the fact that a substantial portion of Plaintiffs' fees were incurred in connection with the trial, which focused on damages arising from the breach-of-contract claim.[3] Accordingly, the court concludes that there is a basis—the reality of how the case was litigated—for concluding that Plaintiffs are entitled to 80 percent of their initial fee request.

---

[3] RoundPoint suggests that the court should disallow attorneys' fees for time spent on unsuccessful motions and arguments. In essence, RoundPoint asks the court to second-guess every decision made by Plaintiffs to determine whether each decision actually advanced Plaintiffs' case. But RoundPoint has cited no authority, and the court is aware of none, that requires the court to reduce an award of attorneys' fees based on unsuccessful arguments that relate to compensable claims.

For the reasons set forth above, the court concludes that Plaintiffs properly allocated $111,308.40 to compensable claims. The court also finds that $111,308.40 is a reasonable fee based on the facts of the case, especially considering that the case was litigated through trial. Having reached this conclusion, the court turns to the question of whether the court should nevertheless disallow attorneys' fees because RoundPoint was unable to respond to Plaintiffs' reply brief before Judge Wells issued her report and recommendation.

2. **Opportunity to Respond to Plaintiffs' Reply Brief**

RoundPoint laments that it was unable to respond to Plaintiffs' reply brief before Judge Wells issued her report and recommendation. According to RoundPoint, the court should deny attorneys' fees altogether for this reason. RoundPoint's argument, however, is premised on a fundamental misunderstanding of a case decided by this court, *Stake Ctr. Locating v. Logix Commc'ns, L.P.*, No. 2:13-cv-1090-JNP-DBP, 2017 WL 1207516 (D. Utah Mar. 31, 2017). There, the defendant first attempted to apportion its fees in its reply brief. *Id.* at *3. This deprived the plaintiff of the opportunity to respond. *See id.* at *3-4. Consequently, the court declined to entertain defendant's attempt at apportionment and denied defendant's motion for attorneys' fees. *Id.*

The case at hand, however, is unlike *Stake Center*. Here, unlike in *Stake Center*, the billing records attached to Plaintiffs' motion for attorneys' fees were sufficiently descriptive to allow the court to apportion fees between compensable and non-compensable claims. And RoundPoint invited Judge Wells to do just that. Moreover, the motion for attorneys' fees was referred to a magistrate judge, unlike in *Stake Center*. Judge Wells issued her report and recommendation based on the parties' briefing. RoundPoint had the opportunity to respond to arguments raised in Plaintiffs' reply brief *in its objection* to the report and recommendation. And RoundPoint has done just that, arguing that Plaintiffs' reply brief failed to properly apportion

fees.[4] Thus, unlike in *Stake Center*, there is no reason for the court to disregard Plaintiffs' summary of compensable fees in the reply brief because RoundPoint responded to it before *this court* ruled on the motion for attorneys' fees.

Finally, *Stake Center* is not controlling here. A decision to disallow fees as a result of a failure to apportion lies within the sounds discretion of this court. Having considered the specific facts and circumstances presented by this particular case, the court rejects RoundPoint's argument that attorneys' fees should be disallowed because it did not have an opportunity to respond to Plaintiffs' reply brief before Judge Wells issued the report and recommendation.

### III. CONCLUSION AND ORDER

For the reasons set forth above, the court ADOPTS Judge Wells' report and recommendation as it relates to the issue of attorneys' fees. Plaintiffs are entitled to an award of attorneys' fees in the amount of $111,308.40. This amount will be included in the forthcoming judgment. The forthcoming judgment will also address the issues raised in RoundPoint's Motion for Issuance of Deed and to Allow Deposit of Judgment Funds into Court Registry (ECF No. 125).

//

//

//

//

---

[4] Because RoundPoint objected to the report and recommendation as it related to apportionment of attorneys' fees, the court reviews the issue of apportionment *de novo*. Consequently, Judge Wells' decision to consider the summary of compensable fees in Plaintiffs' reply brief without giving RoundPoint an opportunity to respond did not disadvantage RoundPoint *in any way*. This court was able to consider the issue of apportionment *de novo*, with the benefit of RoundPoint's objection, and, as set forth above, the court concludes that RoundPoint's arguments are without merit.

Signed January 29, 2018

                                  BY THE COURT

                                  _____

                                  Jill N. Parrish
                                  United States District Court Judge